111 P.3d 625

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Kenneth KIMBALL, Defendant–Appellant.**

No. 30775.

Court of Appeals of Idaho.

April 15, 2005.

Andrew Parnes, Ketchum, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Robert K. Schwarz, Deputy Attorney General, Boise, for respondent. Robert K. Schwarz argued.

LANSING, Judge.

The question presented on this appeal is whether the magistrate court correctly suppressed evidence obtained as a result of a traffic stop. We conclude that additional findings by the magistrate are required, and we therefore remand for further proceedings.

## I.

### BACKGROUND

At approximately 1:20 a.m. Deputy Scott Smyth stopped a vehicle being driven by defendant Kenneth Kimball because Smyth believed Kimball was unlawfully using the high beams of his headlights. As a result of the stop, Smyth determined that Kimball was driving while intoxicated and arrested him for driving under the influence of alcohol, Idaho Code § 18–8004. Kimball filed a motion to suppress evidence of his intoxicated driving on the ground that the deputy had lacked reasonable suspicion to stop Kimball's vehicle.

The evidence at the suppression hearing was largely undisputed. Deputy Smyth testified that as he was driving northbound in Bellevue, he saw a vehicle coming toward him that he believed was being driven with the headlights on high beam because the headlights appeared to be extremely bright, distracting, and at Deputy Smyth's eye level. Smyth flashed his own headlights at the vehicle to remind the driver to dim his headlights. Because the driver did not respond, Smyth turned his vehicle around and effectuated the stop. When Smyth spoke with Kimball, Kimball asserted that his headlights were on low beam.

Kimball and a passenger who had been riding with him at the time of the stop also testified at the suppression hearing. They both confirmed that Deputy Smyth had flashed his headlights at them and both denied that Kimball's headlights were on high beam at the time. Both said that when Smyth flashed his headlights, they checked Kimball's headlights and confirmed that they were set on low beam. At the conclusion of the hearing, the magistrate made a factual finding that Kimball's lights were on low beam, held that Smyth lacked reasonable suspicion for the stop, and suppressed all evidence obtained as a result of the stop.

The State appealed to the district court, which reversed the suppression order. Kimball now further appeals, contending that the magistrate's decision was correct.

## II.

### ANALYSIS

On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the trial court

independently of, but with due regard for, the district court's intermediate appellate decision. *State v. Bitt*, 118 Idaho 584, 585 n. 1, 798 P.2d 43, 44 n. 1 (1990); *State v. Gomez*, 136 Idaho 480, 482, 36 P.3d 832, 834 (Ct.App. 2001); *State v. Ferreira*, 133 Idaho 474, 478, 988 P.2d 700, 704 (Ct.App.1999); *State v. Bowman*, 124 Idaho 936, 939, 866 P.2d 193, 196 (Ct.App.1993). When we review a trial court's decision on a motion to suppress, we defer to the findings of fact unless they are not supported by substantial and competent evidence in the record, *State v. DuValt*, 131 Idaho 550, 552–53, 961 P.2d 641, 643–44 (1998); *State v. Thurman*, 134 Idaho 90, 94, 996 P.2d 309, 313 (Ct.App.1999), but we freely review the trial court's determination as to whether, on the facts presented, constitutional standards were violated. *Id.; State v. McAfee*, 116 Idaho 1007, 1008, 783 P.2d 874, 875 (Ct.App.1989).

■ The stop of a vehicle constitutes a "seizure" of the occupants that implicates the Fourth Amendment guarantee against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). Therefore, in order for such a stop to be lawful, it must be based upon an officer's reasonable suspicion that the vehicle is being driven contrary to traffic laws or that other criminal activity is afoot. *United State v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621, 628 (1981); *In re Driver's License Suspension of Deen*, 131 Idaho 435, 436, 958 P.2d 592, 593 (1998). Reasonable suspicion requires less than probable cause but more than speculation or instinct on the part of the officer. *State v. Van Dorne*, 139 Idaho 961, 963, 88 P.3d 780, 782 (Ct.App.2004). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances—the information known to the officer at the time of the stop must yield a particularized and objective basis for the officer's suspicion. *Id.* It is the State's burden to demonstrate reasonable suspicion for a stop. *Id.*

■ Here, the asserted reason for the stop of Kimball's vehicle was a suspected violation of Idaho statutes concerning the use of headlights. Idaho law requires that vehicles have two headlight settings, an "uppermost distribution of light," so aimed and of such intensity as to illuminate objects at a distance of at least 350 feet, I.C. § 49–922(1), and a "lowermost distribution of light," with an aim and intensity sufficient to reveal objects at a distance of at least 100 feet. I.C. § 49–922(2). Subsection (2) further provides, "On a straight level road under any condition of loading none of the high-intensity portion of the [low] beam shall be directed to strike the eyes of an approaching driver." Another statute, I.C. § 49–923(2), requires the use of low beams when another vehicle is approaching. It provides:

> Whenever a driver of a vehicle approaches an oncoming vehicle within five hundred (500) feet, the driver shall use a distribution of light, or composite beam, so aimed that the glaring rays are not projected into the eyes of the oncoming driver. The lowermost distribution of light, or composite beam, shall be deemed to avoid glare at all times, regardless of road contour and loading.

This statute imposes upon a driver "the duty to dim his lights within 500 feet of an oncoming vehicle." *Crane v. Banner*, 93 Idaho 69, 75, 455 P.2d 313, 319 (1969).[1]

At the suppression hearing, the magistrate first found, based upon the testimony of Kimball and his passenger, that Kimball's lights had in fact been on low beam. Based upon that finding, the magistrate held that the stop of Kimball's vehicle on suspicion of violating I.C. § 49–923(2) could not have been lawful. The magistrate focused on the provision of section 49–923(2) that the low beam "shall be deemed to avoid glare at all times, regardless of road contour and loading," and reasoned as follows:

> That means to me no infraction if you've got them on low beam. They might seem bright on low beam, they might not be adjusted correctly. That's a possibility.

1. *Crane* refers to I.C. § 49–822, the former codification of the statute at issue. In 1988, the statute was amended and redesignated as I.C.
§ 49–923. 1988 Idaho Session Laws, ch. 265, § 249, pp. 549, 700–01.

But it says if you've got them on, that's the way I construe that. If you've got them on low beam, that's the best you can do.

... If the court construes what is reasonable and articulable suspicion to mean that an officer can stop if he can say those lights seem bright to me, then I think I've opened Pandora's box, frankly. I don't want to give the police that authority. I think that the only thing I can do in these circumstances, say, if they're right, they're right. It's reasonable and articulable suspicion. If they're wrong, they're wrong and it is not. I don't think that I can—if I construe reasonable and articulable suspicion in this case to make it be that a police officer can testify that they seemed bright to me. I don't think that that's any standard at all and the police really could stop almost every vehicle down the road.

In its written order granting the suppression motion, the magistrate court further articulated the reason for its decision:

The court interprets Idaho Code § 49–923 to mean that when a driver of a motor vehicle has his lights on low beam, he is not in violation of Idaho Code § 49–923, regardless of whether the lights from the vehicle seem bright or are distracting to the oncoming driver. The court finds that Sergeant Smyth's subjective, unsubstantiated and mistaken belief that Mr. Kimball's motor vehicle had its headlights on high beam in violation of Idaho Code § 49–923, did not amount to the requisite reasonable and articulable suspicion required by the Fourth Amendment of the United States Constitution and Article I, section 17 of the Idaho Constitution.

■ We are not in agreement with the magistrate's view that the last sentence of I.C. § 49–923(2) means there can never be a headlight violation if the lights are on low beam when required to be. In our view, the safe haven provision of section 49–923(2) that the low beam "shall be deemed to avoid glare at all times, regardless of road contour and loading," presupposes that the vehicle is in compliance with the preceding statute, I.C. § 49–922, which specifies the setting for a lawful low beam. Only if the headlights' low beam is properly adjusted in compliance with

I.C. § 49–922 will the final sentence of section 49–923(2) apply. If the low beams on a vehicle are improperly adjusted, so that the headlights on that setting are either too high or too low, an infraction occurs notwithstanding the provisions of section 49–923(2). Therefore, a vehicle may properly be stopped on reasonable suspicion of such a violation.

■ Moreover, even where the headlights are correctly adjusted and correctly dimmed to low beam, it may be possible for an officer to reasonably, though mistakenly, suspect a violation and lawfully stop a vehicle upon that reasonable suspicion. In Fourth Amendment applications, the reasonableness of police conduct is judged against an objective standard. *State v. Weaver*, 127 Idaho 288, 291, 900 P.2d 196, 199 (1995); *Gomez*, 136 Idaho at 483, 36 P.3d at 835. We examine whether "the facts available to the officer at the moment of the seizure ... [would] 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968). *See also Illinois v. Rodriguez*, 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148, 161 (1990). This standard allows room for some mistakes on the part of police officers, so long as the mistakes are those of reasonable persons. *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879, 1890–91 (1949). *See also State v. Buhler*, 137 Idaho 685, 688, 52 P.3d 329, 332 (Ct.App.2002); *State v. McCarthy*, 133 Idaho 119, 124, 982 P.2d 954, 959 (Ct.App.1999); *State v. Hawkins*, 131 Idaho 396, 401, 958 P.2d 22, 27 (Ct.App.1998). "[I]n order to satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government ... is not that they always be correct, but that they always be reasonable." *Rodriguez*, 497 U.S. at 185, 110 S.Ct. at 2800, 111 L.Ed.2d at 159. Subjective good faith on the part of the officer is not enough. As the United States Supreme Court has explained, "If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses,

papers, and effects,' only in the discretion of the police." *Terry,* 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. The mistake must be one that would be made by a reasonable person acting on the facts known to the officer. *Rodriguez,* 497 U.S. at 186, 110 S.Ct. at 2800, 111 L.Ed.2d at 159–60; *Hawkins,* 131 Idaho at 401, 958 P.2d at 27. In sum, a traffic stop will not violate the Fourth Amendment if the officer reasonably suspects a violation of traffic laws even if later investigation dispels the suspicion.

 In the present case, the magistrate found that Kimball's headlights were on low beam, a finding to which we defer because it is supported by testimony given at the suppression hearing. But the magistrate did not continue to the next necessary determinations—whether the deputy nevertheless actually believed that Kimball was driving with his headlights on high beam in violation of the law and, if so, whether that belief was objectively reasonable. The first of these questions involves, in part, credibility determinations, and therefore must be made in the first instance by the trial court. "[T]he power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court." *State v. Kirkwood,* 111 Idaho 623, 625, 726 P.2d 735, 737 (1986).

Kimball argues that the magistrate's statement in its written order regarding Deputy Smyth's "subjective, unsubstantiated and mistaken belief" that the headlights were on high beam constitutes a factual finding that Smyth's testimony about his observation of Kimball's lights was not credible. We do not agree. The magistrate clearly found that Deputy Smyth was wrong about the headlights being on high beam, but the magistrate did not address whether the deputy was credible in asserting his belief that the headlights were on high beam or, if so,

whether the deputy's mistake was reasonable. Nowhere in the record did either party point out, nor did the magistrate court expressly recognize, that the court must decide whether Deputy Smyth's mistake was that of a reasonable person in the circumstances. The magistrate's finding that Kimball's lights were on low beam necessarily encompasses a finding that the testimony of Kimball and his passenger on that issue was credible. It does not, however, inherently constitute a finding that Deputy Smyth's testimony that Kimball's lights appeared "extremely bright, distracting and at his eye level" so that he believed that Kimball's lights were on high beam, was not credible. This Court will not surmise that the magistrate intended an "inherent" finding on an issue that was not directly addressed. Therefore, remand is necessary for a finding by the magistrate as to whether Deputy Smyth, though mistaken, reasonably suspected that Kimball was driving with his headlights on high beam.[2] If the magistrate finds that Deputy Smyth made an honest and reasonable mistake, the stop was lawful and suppression must be denied. If the magistrate finds that the officer did not entertain an honest belief that the lights were on high beam, or that any such belief was unreasonable, suppression is required.

The magistrate court's order suppressing evidence is vacated, and the case is remanded for further proceedings consistent with this opinion.

Chief Judge PERRY and Judge GUTIERREZ concur.

---

**2.** The Honorable Robert J. Elgee was the magistrate judge who heard the evidence at the suppression hearing and acted upon Kimball's suppression motion. He has subsequently become a district judge. On remand, Judge Elgee may be assigned to resolve the suppression motion as a magistrate judge pro tem.